The Board of Immigration Appeals decision was wrong for two reasons. Either one of which suffices to grant the petition. This Court should only reach the first of those questions, the threshold question of divisibility, and hold that Mr. Gomez was not convicted under a divisible statute. The Texas Court of Criminal Appeals made clear in Landrian that Section 2201A1 defines just a single crime of assault. Its mens rea terms are not alternative elements, one of which would need to be selected by a prosecutor and found unanimously by a jury, and so the statute isn't divisible. And the government agrees that if the statute isn't divisible, then the conviction does not count as a crime involving moral turpitude, because only the categorical approach would apply, and this provision isn't categorically a CIMT because it extends to non-turpitudinous conduct. So Mr. Gomez should have been permitted to proceed to the discretionary phase of his cancellation application. That elements-based understanding of DeCamp is how the Fourth, Ninth, and Eleventh circuits have correctly applied divisibility, and this Court should follow suit. Your Honors, DeCamp is unequivocal that elements are the touchstone of divisibility, and that's because elements are the only facts that a defendant is, quote, necessarily convicted of. So DeCamp says a statute is divisible such that the modified categorical approach can apply only when it lists multiple alternative elements and so effectively creates several different crimes. And Landrian answers that question. Landrian says there are not separate crimes under Texas law of intentional assault, knowing assault, and reckless assault. There is just a single crime of causing bodily injury with at least a reckless mens rea. And therefore jurors- Why doesn't that end it? Pardon me, Judge? Why doesn't that end it, if that's the interpretation of Texas law of its own statutes? That does end it, Your Honor, and I think Landrian squarely resolves this case. As the Supreme Court has looked to binding interpretations of state law in the James case in 2007, the Johnson case in 2010, this Court recently noted in the Sanchez-Sanchez decision that the government submitted with its 20HA letter that a decision of the Texas Court of Criminal Appeals is controlling on Texas law. So I absolutely agree that that ends the inquiry here as to divisibility. But isn't it the response in DeCamp to Justice Alito's footnote that's created this confusion and that's why the circuits are split and how do you respond to that response? It seems to say you look at the actual charging documents in the particular case and it's not so much an element versus means distinction. Correct, Your Honor. So I agree that the footnote is what has given rise to the confusion. I think that the only fair reading of the footnote is the one that would be consistent with everything else that the opinion in DeCamp says, including the first half of that very footnote that emphasizes the distinction between alternative means and alternative elements. But to understand the footnote, which is, as Your Honor notes, a response to Justice Alito, it's helpful to look at what Justice Alito is actually saying. So he says, he objects to the majority in this 8-to-1 decisions element-centric approach. And he says, by elements, I understand the majority to mean facts that a jury will have to agree upon unanimously. And he then goes on to say that's going to, quote, cause serious practical problems because it may not be clear from the face of a state statute whether phrases are alternative means or alternative elements. So the majority responds in footnote 2. And what's important is that the majority does not dispute the premise of Justice Alito's objection, only his prediction that this is going to be difficult. So the majority does not say, no, all you need to do is look for the word or in the statute, which is the government's argument here. I would argue that the Texas Supreme Court made what may have appeared to be a difficult task to Justice Alito a simple one here. I think that's exactly correct, Your Honor. I think the majority was right in its response to Justice Alito that this isn't going to be a difficult task. Because sometimes, as here, the case is particularly easy. You will have a precisely on-point decision of a state court that answers the question and makes that a very simple task. Other times, there will be indicators in the text of the statute itself. For example, if a statute assigns different sentences to different prongs of a statute, those will necessarily be different elements of the offense, because under Apprendi, a jury would have to agree on any fact that— But you're saying that the exact same statute in another state could be construed differently by that state's highest court and therefore come out differently. In other words, if another state said, you have to prove the mental state specifically that intentionally has to be agreed upon by the 12, the recklessly has to be agreed upon the 12. You can't just give a jury charge that says intentionally, knowingly, or recklessly. You figure it out and have four jurors think it was reckless and eight think it was intentional, and that's a unanimous verdict. If you had another state that said that, then the outcome would be different in that state? Yes, Your Honor. Is that what you're saying? Okay. So that you're saying that the effect of DECOMP is to leave it to the states to define their own statutes. And where there is the word or, which kind of looks divisible, if they're construing it as an and, and any one of those, jurors could be disagreeing about which one it was, but as long as they agree that one of them was there, then that's an and, really. That's exactly correct, Judge Haynes, and that's because federal courts take state law as it comes, and federal courts accord the respect to the states to define their own crimes. And when a state court issues a binding pronouncement of what state law means, that, that is state law. It doesn't matter whether it comes from the decision or in the text of, of the statute. So, so. States are going to have different statutes, for one thing. I mean, obviously, I mean, certain things are going to be offenses in one state and not others. So it's, it's all derived from state law, this whole inquiry, unless the person's convicted of a prior federal offense. That's exactly right, Judge Costa, and, and that again is why, that, that is the underlying purpose of the categorical approach, is to ensure that like state offenses are treated alike for purposes of federal consequences. But if one state defines three different crimes of intentional assault, knowing assault, and reckless assault, then those are unlike the crime as it exists in Texas, and states are free to define their crimes however they see fit. So, so again, the, the response to Justice Alito's dissent is simply a, a, it, it doesn't dispute the premise that it's important to identify the elements and distinguish them from the means. It doesn't say all we're doing is looking for the word or. It just says it's not going to be that difficult in practice, which this case is a prime example of. And at a minimum, there's going to be some indication of what state law provides in the record before the court. There's going to be an exemplar of state law, and that's all that the majority was saying. The majority is saying because you're going to be able to look to state law to figure But what if in this case the indictment in Texas had just said intentional, didn't list the alternatives? So Your Honor, my answer would be the same. I want to be clear that I don't need to convince you of that to win this case because that's not what the record shows here. But, but the, the reason that the answer would be the same is that the element of the offense under state law is going to be the same across all cases. Texas law doesn't change case to case depending on what particulars are pleaded in a given case. If it's an indivisible element, there is only one offense under Texas law. And so, so the same would be true of the California burglary statute that was at issue in DeKalb. If the charging document in Matthew DeKalb's 1970 conviction for burglary had said Matthew Robert DeKalb unlawfully entered the Centro Mart at such and such time and place, that still wouldn't become an element of the offense under California law. That would be an extraneous or unnecessary fact that had also been pleaded. What if the jury charge in that case had mirrored the indictment and the jury was just charged? Did he intentionally commit this assault or this crime? So, so the 10th circuit in that, I think the 10th circuit says you should look at that and that sort of answers the first question and would make it a divisible statute because in fact, in that case it was divided up. Right. So, so there, there are two questions in there, Judge Costa. I want to answer both. First, the 10th circuit did say that, it then qualified its holding and said, we may be wrong on that. And so we find in any event that this is divisible and I think that's because of the confusion that's arisen here. But in, in answer to the first part of the question, I, I again want to be clear, I don't need to convince you of this because of the record here. I, my, my answer would still be the same though, that even if a jury, even if that were charged to the jury, that, that still wouldn't change what the elements of the offense are under state law. And DeCamp says expressly that federal law is to function as an on-off switch so that a state conviction qualifies in all cases or in none. And that's what it means for this to be a categorical approach and to look at the state offense in the abstract. Okay. Why don't you turn to, if we assume it's divisible arguendo, then what was wrong with how the BIA approached that? Okay. So on the burden of proof question, which again, the court would only reach if it disagrees with me on, on. I assumed it arguendo. Yes. Okay. Just, just making sure I protect that, Judge Hance. So in, in that case where the BIA erred was in, in identifying what the correct question is. The BIA thought that he had to prove affirmatively that he was convicted of reckless assault, but all that it, all that is required is to prove that you were not quote necessarily convicted of a qualifying crime. So that would mean that he was not necessarily convicted of intentional or knowing assault. And the, that distinction makes a difference, whereas here the conviction is ambiguous because even an ambiguous, this is what Moncrete says, ambiguity means that the conviction does not necessarily establish the qualifying elements of the federal offense. Now we're getting this whole burden of proof. And frankly, I thought, I mean, I was on the panel that got reversed in Moncrete, so I remember it very well. And I thought that it was doing away with the whole burden of proof because there was a burden of proof aspect to Moncrete and that I thought was determinative, but obviously was wrong. But they're saying that in Moncrete, the difference is the burden was on the government and here's the burden is on you to, to prove eligibility for cancellation removal and therefore the ambiguity cuts against you. So there are, their test, I guess their rule is he who has the burden suffers for the ambiguity. What's wrong with that argument? So that is their argument. What's wrong with it is the government did not lose Moncrete because the burden was on the government to prove removability. Moncrete doesn't say that. That argument was actually made by the petitioner in Moncrete, but not adopted by the court. And the reason for that, I suspect, is that the court understood, as it said in footnote four, that the analysis is the same in both the removal and cancellation context. And indeed in Moncrete, there was no dispute that Adrian Moncrete was removable either way. He was removable as a controlled substances offender. And so what the court says in the first two paragraphs of its opinion is that the entire import of its decision is whether he will be able to apply for discretionary relief from removal in the form of asylum or cancellation. And later on in the opinion, the court says, having been found not to have been, not to be an aggravated felon, he may apply for that relief assuming he satisfies the other eligibility criteria. And it cites the provisions not having to do with an aggravated felony. If we were, let me ask you this, would this be a functional rule dealing, assuming we get to this question, with this whole burden of proof? It seems to me, if you dig down into like Alamanza, that case that is kind of tangled up in the Ninth Circuit, and then there was another case, Enso Carr, recently, it seems to be dealing with production of the documents. If you have the burden of proof and the I.J. says, go and get the plea colloquy transcript or go and get this or that document, and you don't do it, then you lose for want of that. But if you've produced everything there is, and here we have a judge who simply says guilty and doesn't make findings of fact, then are you done with your burden? And now we have this ambiguity, and the ambiguity then leads to a finding that it's not a CIMT. That's exactly right, Judge Haynes. The ambiguity here is about the meaning of a complete record of conviction. So Your Honor identified the precise distinction between this case and Almanza, the one in the Ninth Circuit. There, there's a question of a burden of production. He was told to find documents that weren't, and didn't produce them, and the question is what role that plays. That issue isn't presented here and could be reserved by the Court, because it's undisputed here that the record of conviction is complete. The Board didn't say he failed to. Okay, and so if this isn't, this is in essence, it seems to me, an unprovable fact. What was the judge going off on? Was the judge saying it was reckless or intentional? We don't know, can't know, never will know, we're not going to bring in the judge and depose him or her. So that being the case, we will always have ambiguity, and then should we still then apply their presumption that, you know, whoever has the burden of proof loses on ambiguity, even if it's an unprovable fact, and why not do that? So the answer is no, you shouldn't do that. The reason is because, again, the question is, was he necessarily, does the conviction establish that he was, quote, necessarily convicted of, in this case it would be intentional assault or knowing assault? And the answer is, even if there's ambiguity, that's enough to say he was not necessarily convicted of knowing assault or intentional assault. But also doesn't it fall under that rule of, unless you can't bring forward the evidence of the fact? Yes, Your Honor, there's a presumption that the conviction rests on the least of the acts criminalized. And that presumption applies in both contexts. And again, as this Court said in Sarmiento's, that's true under cancellation. Thank you. Mr. Goldman, you've saved some time for rebuttal. Mr. Bless from the Department of Justice. Yes, Your Honors. May it please the Court. My name is Jesse Bless. I represent the Attorney General of the United States. Thank you very much. The good news, I'll start with the bad news, the bad news is this is a difficult issue. The good news is this Court's not riding on a clean slate. We have multiple cases post-death camps where this Court has decided that death camps merely reaffirm this Court's prior case law. It didn't change anything. Nothing's drastically changed on how we interpret a criminal statute. When there's alternative crimes, we may resort to a limited set of documents to make sure that the elements are proven by a jury. Esparza Rodriguez was the first time this Court took up this issue. And in that case, Judge Costa, as you pointed out, the prosecutor in that case put in the indictment that it was just an intentional assault. And so we do know that a prosecutor will do that in this statute. And in that case, the government won, it met its burden, because the indictment showed that it was an intentional assault, which is a crime involving moral turpitude. Here it's slightly different. We have a different burden of proof, but the divisibility question's the same. We know there's alternative crimes, and in fact, in Hicks, which was decided after Landrian, the Court of Appeals in Texas said, Landrian didn't say that these are the same crime. They're lesser included offenses under the plain language of Texas criminal statute 37.09. And I can cite you Hicks. So we do know that a prosecutor in Texas can charge, and it was in Esparza Rodriguez, intentional assault, reckless assault, knowing assault. They're different crimes. The difficult question here is, what do we do when the alien bears the burden of proof for discretionary relief? The government's not trying to remove this person because of a crime involving moral turpitude. He's trying to apply for discretionary relief. Your approach results in a different outcome. So he's not an aggravated felon because this is ambiguous, but he can't get cancellation removal because this is ambiguous. So the same exact crime then becomes both because of the ambiguity. I mean, it's both an aggravated felony and not an aggravated felony, depending on who it is. That just seems kind of funny to me. I'm not saying it can't happen. I'm not saying you can't have a weird outcome, particularly in immigration law. But that seems to me to be an unlikely thing in the law, to have the exact same conviction support two wildly different yes and no. Well, Congress sometimes does things that are unlikely. And in this case, there's a plain language of the statute, INA 240C4A, which says that the burden clearly lies with an applicant for discretionary relief to meet a statutory eligibility requirement. So he has a burden, and so he can't just play hide the ball as they did in Alamanza on some documents that might, you know, hurt him and this kind of thing. But we have everything here. Nobody's saying we're missing something. And we have an unprovable fact. What was the judge thinking when the judge said guilty? And in that unprovable fact world, wouldn't that fall under the statute about you have to produce the facts unless they're unavailable? And here it's unavailable, and therefore that can't be counted against him. But Judge Haynes, you wrote the case in Francis, which is unpublished. But in that case, that's what we have here. And that was at 556 Fed Appendix 343. But no, no. I don't think it's addressing this. I really don't. Well, then let's look past Francis. Let's look to the First Circuit two weeks ago in Sauceda. Let's look at Salem in the Fourth Circuit. There are cases where the government might not be able to meet its burden of proof, but yet an applicant for discretionary relief cannot meet his or her burden of proof. That is Hornbrook law that, I mean, here's the thing. If Congress said, you know, inconclusive record of conviction, that's sufficient. But here we don't have that. It's a burden of proof that has to be met by preponderance of the evidence. There is no evidence, though. I mean, there's just an absence of evidence. It's a pure legal question, because the charging, nothing is going to narrow down the offense. There's nothing to prove or disprove. That's why it seems a little out of place in that context, or in the particulars of this case. Well, not necessarily. I mean, here's, if he had . . . Are you saying he could call in witnesses from the offense to say, well, all the charging documents . . . because the whole modified categorical approach is limited to looking only at certain, you know, documents that are central to the court process. I don't think he can start bringing in eyewitnesses and things like that unless . . . Well, no, and that's the limitations of the modified approach where the government . . . I mean, because if you look about how the categorical approach was developed, it was developed in a, you know, sentencing case law where the government always bears the burden of proof. And of course, we've encompassed that now in the immigration law where the government does not always bear the burden of proof. And so, that's somewhat problematic, and maybe call for a circumstance-specific approach. But where you have here, if we're limited to that, and we have a burden, so the government cannot meet its burden, and that's fine. But there are definitely cases where the alien cannot meet its burden when everything's on the table. That's true. And that's . . . that's not . . . it's not unfair. I'm . . . I'm really getting lost in all this. Okay. What is the point? What is the point that we're circling around here? The point is, did the alien meet his burden of proof to establish statutory eligibility for discretionary relief? By what? By showing that he did not have a disqualifying conviction, Your Honor. And in Esparza-Rodriguez . . . What are you saying? What is your . . . what is your argument now? My argument is that . . . that record of conviction is inconclusive. And so, because it's inconclusive, he could not meet his burden by a preponderance of the evidence. And why is the record inconclusive? Because we don't know whether he committed an intentional assault, or merely was found guilty of a reckless assault. He was definitely found guilty of one of them. Well, what does it matter? I mean, he was convicted of the crime, and he was convicted of one of the three. Yeah. So, I mean, what does it matter? Well, let me step . . . in Esparza-Rodriguez . . . I mean, I understand that if the jury had specifically found that it was intentional, and everybody voted intentional, I took a poll of the jury, you may have something. But I . . . this seems to me to make it something that is complicated, and abstract, and nonsensical. Well, that is the categorical approach, and the way we try to deal with this subject. Even more complicated. And I don't know why . . . the guy was convicted. I mean, he was convicted, and he could have been convicted of either three . . . one of three things, and one of them . . . and you cannot say what he was convicted of. Therefore, there's no evidence that he was convicted of a crime of moral turpitude. And if the government bore the burden of proof in that question, we would lose. I want to step back. I mean . . . What, he's got to prove he was not? Yes. That's what the regulations and statute says, by preponderance of the evidence. And . . . Well, I mean, it is by preponderance of the evidence. If you look . . . He has a conviction. Right. I mean, if you took Esparza Rodriguez, and you flipped it, so that the prosecutor only charged him with reckless assault, and he presented that to an immigration judge, or he had a plea call, and he said, I just want to make clear, I'm only pleading to reckless assault, he would be eligible for cancellation of removal. You're splitting it too thin for me. What do you do with the necessarily convicted phrase that your opponent's relying on? And that comes from Moncrief. Now, Moncrief, you're well aware, Judge Haynes, that was a strict categorical case. They never went to the modified approach. So, that stopped at the first step. There was a lot going on in Moncrief, to be honest with you. And when I saw how Moncrief came out, because I had thought this burden of proof thing was important. I really had. It's not necessarily shown in the opinion from the Fifth Circuit, but I had thought that. And then, when I saw it came out, I thought, well, that really doesn't matter. It cannot be proved. There you go. What's in my head is a hard thing to prove. But, it seemed to me, that kind of went out the window. So, I mean, the problem I have is, it's an unprovable fact what the judge was thinking here in this bench trial. And how should that cut? And in everything under the sun, it is always, that's not a crime of aggravated felony, moral turpitude, whatever, whatever that we're trying to prove. We always go for the least element. So, this would, to me, be a going the other way. It would be going against, swimming against a very big current. Well, every circuit to decide this question has ruled in the government's favor. If you look at the Fourth Circuit, First Circuit, Seventh Circuit, I mean, every court, even this circuit. But have they all been looking at this? Because a lot of the cases that I was reading were turning on the issue of production of documents and this and that. And so, this case presents the cleanest version of this. There's no question about documents or hiding the ball or picking and choosing or any of that stuff. So, we have a clean question of how does ambiguity cut? And your answer is, it's going to be, we're going to get the yes and no answer from the exact same conviction. Yeah. I mean, that's how it's going to shake out. And that just makes no sense to me. Well, if you look at it, this isn't a sentencing case. This is civil immigration where someone is applying, we're not, the government's not taking an action against the applicant. He's removable on a different ground. He wants a limited set of discretionary relief. Congress said, if you want this limited relief, you need to affirmatively prove your case. And where you can't do that, just like any finding of fact, just like hardship. If you can't come up with the evidence, you lose. And every court, Salem in the Fourth Circuit, First Circuit in Posada, Sesedo. You know, it's kind of hard to prove a negative. So, the alien has to prove, I've never been convicted of a crime involving moral turpitude. Do they, how does this typically work? Do they normally have to pull up their criminal history and show an absence of a conviction? I mean, I'm guessing it's the government who says, oh yeah, but you can't show that because here's this, you know, 2005 Texas conviction, look at this. I mean, he doesn't normally have to prove an absence of convictions, right? Well, no, the government has to establish first that you may have a disqualifying conviction. So, here we know that an intentional assault is a disqualifying conviction. Then, the alien has to come back and say, in this case, I was convicted of reckless assault. And there's going to be cases where that alien can do that. There's going to be, just like Esparza, a Texas prosecutor may only have enough evidence to prove reckless assault. And the alien will be able to come in and say, yeah, I was convicted under Texas Penal Code 22.01A1, but it was reckless. And the immigration judge will be forced to say, yeah, you're eligible. You met your burden of proof. But there are going to be times where it's just inconclusive. Let me ask you this on your burden of proof argument. If you really take it to its extension, and even reading Judge Garza's concurrence, which advocates this burden issue, even if the statute is indivisible, in other words, even if you lose on the first issue, if you really take the burden argument to its full logical conclusion, wouldn't that apply too? And the government would win in that situation? Because if it's an indivisible statute, the person being removed can't show that he wasn't convicted of a crime of moral turpitude because it's an indivisible statute? You know, I'm very happy that you brought that up. That's a very good point. Because that's exactly what Moncrief was. And the outcome is the government loses, and the alien is eligible, because what Moncrief said was nobody convicted under the statute is an aggravated felon. It's indivisible. And if this court were to rule that this Texas statute, if it were to overturn Esparza-Rodriguez and say it's indivisible, every alien convicted of Texas assault would be eligible for cancellation. Okay? So if it's indivisible, meaning that government... So, no. The alien wins. Because he could say, look, it's never a generic offense. And if you so... And to take it in a sentencing context, because again, we're not dealing with just... This categorical approach is broader than just immigration. So that this court has actually held that Texas assault is a violent felony. And if it was indivisible, that means that that case law goes out the window. So that nobody convicted under this Texas statute is now convicted of a violent felony. It's never a crime involving moral turpitude. That is not what the Supreme Court said. That is not how it's supposed to be interpreted. And in footnote 2, they specifically address that. We're not supposed to be parsing state law. And, you know, Judge Jolly and Judge Costa, you have a number of cases, post-test camps, where you've done it correctly. I mean, you really have. We have Soran, Conde Castaneda, Sanchez, Espinosa, Judge Costa. Those are good decisions. Those are right. Those are correct. And so, applying that here, we have a divisible statute, and the question becomes, okay, the government can't meet its burden, but the alien can't meet his burden either. And there... Let's go past all this, you know, Taylor Shepard line of cases, which is a complex area, and just step back and say, why are we here? We're here because he's asking for discretionary relief, cancellation removal. And to get there, he has to meet these requirements. But that doesn't mean he gets the discretionary relief just because he meets these requirements. It's still discretionary relief. And so, to me, it seems like you're making an impossible burden for a guy who isn't even going to win, because I see a lot of these on appeal from the immigration judge, where he's done all of this, but they find that, you know, it isn't enough of a hardship, or it isn't this, or it isn't that, and it's still discretionary relief. So why are we making this impossible burden for him just to be allowed to ask for mercy? Because that's what lawyers do. Well... And that's the way Congress set it up. Well, Congress didn't set up this Taylor Shepard stuff. Well, no kidding. That's what I'm saying. If we're going to construe this in light of the overall statute and the totality of circumstances, simply being allowed in the door to beg for mercy, then are we going to assume Congress wanted to send up an impossible burden just to be allowed in the door to beg for mercy that you often aren't going to get? Again, you guys have hit on what is the difficulty with the categorical approach in the discretionary relief context, but we are left with a statute and regulation that is plain. And if we cannot put the person on the stand, I mean, if you look at this case, I mean, and again, I'm not speaking for the Attorney General here, I'm just giving you a hypothetical that I think addresses your point. Why shouldn't the alien be able to go on the stand at an immigration hearing and say, it was reckless assault, and if the immigration judge believes him, find him eligible for discretionary relief? Because the modified categorical approach doesn't allow that. Exactly. So we're left. We can't do that. So we have this burden of proof, and we have an inconclusive record of conviction. We're constricted. The government's most often the one that bears the fatality or the you know, the limitations of that approach. But in discretionary relief, it's different. And every circuit, I mean, this case, our case that we're talking about right now was just decided by the First Circuit. And they joined every other circuit to have addressed this issue. And they said, and I want to quote, it's Hornbook law that the allocation of the burden of proof determines which of two contending litigants loses when there's no evidence on a question or when the answer is simply too difficult to find. Hornbook. And so we're not taking a drastic approach. It's the approach that every circuit has adopted. And this is a unique case because, again, if the alien comes in and says it was reckless assault, we know from Esparza Rodriguez that alien is eligible for cancellation. If he comes in and it's intentional, we know he's not eligible. And we also know, or we should know, in the statute and regulations demand, that when he cannot show that it was reckless and we're left with doubt, that he cannot meet his burden of proof. Just like any applicant for discretionary relief could not meet his or her burden of proof. And that's just the way it is. And again, I want to... Can you send us a 28-J on the First Circuit case I'm looking for? Yes, ma'am. Do you remember when you sent that? Why can't we say... I think it was last Thursday? Given the language of this statute, of course, we don't know what he was convicted of. And if he comes forward and says he was convicted under this statute, that's satisfactory to show that he was not convicted of a crime of moral turpitude, because it's far more likely that there was not a jury, a unanimous jury on that particular prong when you have three ways to go under the statute. It's more likely than not that he was not convicted of a case that satisfied his burden by preponderance of the evidence. I actually like where you're going with that, because if you look at it and we know that intentional in knowing... I'm falling into your trap. Yeah, maybe you are. I guess if there's three ways and two ways of crimes involving moral turpitude, there's only a 33.3% chance that it was reckless, and so he cannot win, because knowing and intentional assaults are crimes involving moral turpitude, so there's a 33% chance that it was reckless. So, we win. Right? Well, practically speaking, I mean, most assaults are knowing or intentional, but I don't think there's any case law that says you can get into that type of analysis. Yeah, I wish we could. Yeah, I mean... It can happen the other way. I think it's really important, you know, preparing for this case, and I only have 45 seconds left, I mean, looking at how this court has done it, as far as the Rodriguez is a very good case. Can I just ask you quickly, because I found the 28J you were talking about and the response to it, and I remembered the question I had on this, which is he's saying that burden of proof doesn't matter on a question of law, and that's what we're dealing with. How do you answer that? Well, that is not how every court to have looked at this issue has interpreted it, and that's not how the statute reads. The statute says you have to meet your burden on the statutory eligibility question. It doesn't break it up between factual and legal questions. And we do know that at the time Congress put forth the statute, that there was legal questions involved in that statutory eligibility question. So, again, I just really urge the court to take a look at every court. Back to the Venus flytrap question. And that is, you had to have 12 people on the jury to convict him of a moral turpitude. You had to have 12 people that were going to find that. And if one person found that it was reckless, there would be no conviction for moral turpitude. That puts the odds higher and makes me the Venus flytrap and you the insect. Touche. But here, we have a bench trial. It was a bench trial. So we only have the trial judge. And so we don't have that in this case. The trial judge could have thought reckless. That would be even more Venus flytrap-y. If you look at the practical if this court were to rule as the government urges in this case, it would provide clear notice that if someone in Texas is prosecuted for assault and they wanted, you know, thinking about the implications on the immigration side, if the prosecutor could at least know, I need to plead to reckless assault. Whereas as far as it already set the ceiling, we know that if you plead to a, you know... Yeah, but he can't tell the judge how to decide the case. Okay, we've got a red light here. Yeah, I apologize. I hope I didn't do that. I'm doing my best. Thank you. Thank you, Your Honor. Just a few quick points in rebuttal. You made a fine argument. We're the ones that are confused, not you. How do you distinguish Esparza-Rodriguez which isn't the same statute where it was the hypothetical I posed earlier which just intentional is in the indictment and our court says that was treated like a divisible statute? So one correction to my friend's characterization of Esparza. Esparza said knowing or intentional, not just intentional. So that's significant because even that confirms that it's not that one of the terms has to be selected and found unanimously by a jury. But to Your Honor's question about distinguishing it, Esparza is a pre-DeKamp case. It is actually mostly correct even after DeKamp in finding that subsections 1, 2, and 3 of 2201a are divisible. It's just the final analytical move that Esparza makes at the end where it says he hit somebody across the head with his hand so that could only be knowing or intentional conduct. That kind of reasoning from the facts to what the element must have been is unacceptable after DeKamp. So it's just that last move that doesn't work. So this court certainly wouldn't need to overrule Esparza-Rodriguez. It just presents a different scenario in this case. On the burden of proof point I again just want to slightly correct something that my friend says. He says all the circuits have gone with the government. That's incorrect. The second and the third circuit, Judge Haynes. The ninth we don't know. The ninth remains to be determined. Right now it's on the government side to be sure. But the third circuit in particular I would call the court's attention to its post- Moncrief decision in Johnson which we cite in the reply brief that walks through exactly this analysis and how Moncrief affects the burden. Similarly... Is that how you handle the ambiguity question? So the answer comes from Moncrief, Your Honor, which is that if there is ambiguity with respect to the conviction, that means it does not, quote, necessarily establish the qualifying facts. And that's because this is that's because there is a legal presumption that operates regardless of the context that a conviction rests only on the least of the acts criminalized. This court in Sarmiento supplied that same least acts presumption in the cancellation context. And again, Moncrief is both a removal and a cancellation. So we wouldn't be creating a split either way we went, but we would be swimming upstream if we went your way on this issue on the, if it's divisible, yada yada. So I wouldn't even say that, Judge Haynes, because after Moncrief, and I agree with you, I think Moncrief does speak volumes in its silence as to the fact that, you know, in the case of Moncrief, all that we have is the decision of the First Circuit, which absolutely is on the government's side, and the decision in Johnson from the Third Circuit, an unpublished decision, but that's on our side. The other cases that the government has cited post Moncrief are a footnote of dicta from the Seventh Circuit, and the Third Circuit's decision in a case called Sybilis, which is a case where the categorical approach does not apply, and so the I.J. is actually looking into the facts of the case. That's a very different scenario. Johnson. The Silva-Trevino third step thing? It wasn't the third step. It had to do with a circumstance-specific approach, as in under Nijewan. So very different, very different scenario. I want to go to your point, Judge Haynes, about the fact that this is an unprovable fact, and that's going to be especially true in a case like this, where you are dealing with terms that need not be agreed upon by a jury, because there is no incentive to contest whether it was intentional or reckless assault. There is no reason for a jury to find or for a court to find that it was one or the other, because that is irrelevant under Texas law, and that's exactly what the Supreme Court said in DeKalb. The defendant can't tell the jury what to decide. I mean, he certainly could control his own plea, if he made a plea, but he's not required to plead. He goes to trial. He can't control what the judge makes findings of facts on. He certainly can't control what the jury— well, he can object to the jury question, but— That's exactly— It's just a different case. A small point, but what is an unprovable fact? How is it ever a fact if it's unprovable? Well, so it's that under the procedures of the categorical approach, there would be no way to meet this burden, because it's very— How is there a fact? I'm just talking about semantics. I don't know. I'm trying to figure out what an unprovable fact is. Something you can't prove is— I was just hoping we wouldn't get hung up on that nomenclature. I don't know. Sure. Well, I— Your point is a question of law, and you're agreeing with me. Yes. That's exactly right. It's a purely legal question, as the Court again reaffirmed in Malooly recently. We ask that the petition be granted. Thank you. Okay. Thank you very much. We're going to take a break.